# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

N° 11-CV-1798 (JFB)
_____

TRACEY LOSQUADRO,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____

**MEMORANDUM AND ORDER**
September 21, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Tracey Michael Losquadro, ("plaintiff" or "Losquadro") brings this action, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, challenging the decision of the Commissioner of Social Security ("defendant" or "Commissioner"), dated July 30, 2010, partially denying the plaintiff's application for Disability Insurance Benefits ("DIB"). The Commissioner found that plaintiff became disabled on November 10, 2008, when the plaintiff's age category changed to an individual approaching advanced age (20 C.F.R. § 404.1563). The Commissioner found that, prior to the established onset date, plaintiff's residual functional capacity allowed him to engage in unskilled sedentary work, which existed in significant numbers in the national economy.

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, alleging that the Administrative Law Judge ("ALJ") erred by: (1) failing to give controlling weight to the opinions of plaintiff's treating physicians; (2) failing to properly consider plaintiff's credibility; and (3) failing to properly consider the opinion of the treating chiropractor.

For the reasons set forth below, the case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. In particular, given that (1) the ALJ afforded little weight to the opinion of the treating chiropractor *solely* because he is a chiropractor and (2) the Court would simply

be speculating as to how the ALJ would have otherwise weighed the chiropractor's opinion under the applicable factors pursuant to S.S.R. 06-03p, the case must be remanded to the ALJ for further consideration of the chiropractor's opinion as an "other source" under the applicable factors. The Court finds the other arguments put forth by plaintiff, however, to be without merit.

## I. BACKGROUND

### A. Facts

The following summary of facts is based upon the administrative record ("AR") as developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

#### 1. Medical Evidence

##### a. Treating Physicians

###### i. Dr. Mitchell Goldstein

Dr. Goldstein, plaintiff's orthopedist, began treating plaintiff on February 28, 2006, following a work injury four days earlier. (AR 415.) He examined plaintiff on 20 separate occasions from March 23, 2006, through October 8, 2008, on a nearly monthly basis. (*Id.* at 404-13, 530-34, 570-72, 593-605.) Plaintiff complained of right shoulder and lower back pain with numbness and tingling down to his left leg. (*Id.*) Physical examination led Dr. Goldstein to report that plaintiff had low back pain, left sciatica and myofascitis, right shoulder tendonitis, and a right arm strain. (*Id.* at 416.) He recommended a therapy program. (*Id.*)

In March 2006, Dr. Goldstein noted that plaintiff was additionally having tremors, and diagnosed a cervical and lumbosacral sprain and right shoulder tendonitis. (*Id.* at 413.) He opined that plaintiff was totally disabled and advised continued chiropractic treatment. (*Id.*) In August 2006, plaintiff also began receiving cortisone injections. (*Id.* at 409.)

In January 2008, Dr. Goldstein opined in a letter that plaintiff remained permanently and totally disabled. (*Id.* at 535.) In February 2008, Dr. Goldstein assessed that in an 8-hour workday, plaintiff could sit for 0-1 hour, stand/walk 0-1 hour, and lift/carry up to 5 pounds occasionally. (*Id.* at 544-46.) He also opined that plaintiff could not push, pull, kneel, bend or stoop and that plaintiff's pain was often severe enough to interfere with attention and concentration. (*Id.*) On October 8, 2008, Dr. Goldstein again reported that plaintiff was unable to work and remained disabled (*Id.* at 605) and reiterated, in August 2009, that plaintiff was totally disabled. (*Id.* at 24.)

###### ii. Dr. James Liguori

Dr. Liguori, a neurologist, first examined plaintiff on October 26, 2004, and an additional eight times ending on March 7, 2007. (*Id.* at 402-03, 355-56, 352-53, 349-350, 344-45, 341, 338-39, 489, 492-93.) Dr. Liguori diagnosed cervical and lumbosacral radiculopathy. (*Id.* at 403.) He confirmed his diagnoses in subsequent examinations with the plaintiff. (*Id.* at 376-80.) From February 2005 to January 2006, he administered trigger point injections to the left cervical spine. (*Id.* at 380-85.) In March 2006, Dr. Liguori opined that plaintiff was totally disabled from his work duties. (*Id.* at 367.)

Dr. Liguori's follow-up examination in July 2006 showed that plaintiff still complained of neck pain radiating to his right shoulder, lower back pain radiating to his left lower extremity, and left leg numbness. (*Id.* at 349-50.) Physical examination revealed muscle spasm in the cervical and lumbosacral

2

spine and decreased pinprick sensation in his left lower back and lower extremity. (*Id.*)

On January 16, 2007, Dr. Liguori added an additional diagnosis of questionable early Parkinson's disease. (*Id.* at 373-74.)

In the period between April 14, 2006 and March 7, 2007, Dr. Liguori completed several Workers' Compensation Board forms reporting his diagnoses of radiculopathy and his opinion that plaintiff was totally disabled from all work duties. (*Id.* at 358, 337, 340, 342, 348, 351, 354, 494.)

On August 27, 2007, Dr. Liguori assessed that, in an 8-hour workday, plaintiff could sit and stand/walk for 15 minutes at a time and less than 2 hours total. (*Id.* at 488.)

On February 12, 2008, Dr. Liguori assessed that, in an 8-hour workday, plaintiff could sit for 0-1 hour, and stand/walk for 0-1 hour. (*Id.* at 563.)

iii. Dr. Dominic Gadaleta

Dr. Gadaleta, a psychiatrist, completed a questionnaire in May 2007, indicating that he first began treating plaintiff in September 2006. (*Id.* at 444.) He reported that plaintiff was extremely depressed, had a history of depression, and maintained symptoms of insomnia, anxiety, fearfulness, hopelessness and anhedonia. (*Id.*) He diagnosed patient with major depressive disorder and secondary panic attacks with agoraphobia, and noted that patient was easily distracted, self-isolating, and limited in concentration, adaptation, and social interaction. (*Id.* at 448.) Dr. Gadaleta opined that plaintiff could not function in a work setting. (*Id.*)

On February 12, 2008, Dr. Gadaleta assessed plaintiff's mental residual functional capacity to perform work-related tasks. (*Id.* at 551-58.) He reported that plaintiff was "markedly limited" in a few tasks, but only "moderately" or "mildly limited" in many others. (*Id.*)

On May 5, 2010, Dr. Gadaleta completed an assessment that indicated moderate limitations in plaintiff's ability to perform several work-related tasks and opined that plaintiff was unable to work. (*Id.* at 696-97.)

iv. Dr. Howard Rosner

Dr. Howard Rosner, a chiropractor who treated plaintiff one to three times a week since November 2004, assessed the patient in January 2007. (*Id.* at 420-32.) In an undated note, Dr. Rosner wrote that patient remained totally disabled due to spinal disc bulges and herniations with subsequent leg and arm radiculopathy. (*Id.* at 559.) He reported that, in an 8-hour workday, plaintiff could sit for less than 6 hours, stand/walk less than 2 hours, and lift/carry up to 10 pounds occasionally. (*Id.* at 429.) He also opined that plaintiff had decreased grip and dexterity, and limited ability to push and pull with his upper extremities. (*Id.*)

v. Dr. Jasjit Singh

On March 6, 2009, Dr. Singh, a neurologist, indicated that the plaintiff continued to get chiropractic care for his cervical-lumbosacral radicular complaints and a request for acupuncture was made to relieve the plaintiff's severe pain. (*Id.* at 573.) On June 5, 2009, Dr. Singh assessed cervical and lumbosacral radiculitis. (*Id.* at 584.) Dr. Singh continued treating plaintiff until March 9, 2010, and administered trigger point injections on three occasions. (*Id.* at 684-86.)

b. Diagnostic Tests

In November 2004, an MRI of plaintiff's cervical spine revealed subligamentous posterior disc herniations impinging on the

3

anterior aspect of the spinal canal, but there was no evidence of spinal abnormality. (*Id.* at 300.) An MRI of the brain was normal. (*Id.* at 388.) EMG and NCV studies of the upper extremities were within normal limits. (*Id.* at 396-98.) However, EMG and NCV studies of the lower extremities in December 2004 showed radiculopathy of the left lower extremities. (*Id.* at 389.)

An MRI in January 2005 revealed lumbar lordosis, disc herniations, and a subligamentous herniation. (*Id.* at 301.)

An EMG performed in January 2006 revealed bilateral mild carpal tunnel syndrome. (*Id.* at 377.) An EKG performed in February 2006 revealed nonspecific T-wave fluttering, and was considered borderline and an echocardiogram showed adequate left ventricular function and mild mitral regurgitation. (*Id.* at 305, 322, 478.)

An MRI performed in March 2006 showed significant chronic acromioclavicular, joint hypertrophy and rotator cuff tendonitis, but no signs of a labral tear, fracture, or dislocation. (*Id.* at 335.)

An MRI performed in April 2006 revealed reversal of the normal cervical curvature, cervical spondylolisthesis and discogenic changes, but no evidence of spinal cord compression. (*Id.* at 336.) Electrodiagnostic studies revealed evidence of radiculopathy of the lower extremities, however, the upper extremities were within normal limits. (*Id.* at 359-65.)

VNG testing on April 27, 2009 was abnormal and consistent with possible central pathology, possible benign paroxysmal positional vertigo, and possible peripheral vestibular disorder. (*Id.* at 575-81.)

An MRI of the lumbar spine in May 2009 showed a moderate-sized left posterolateral disc herniation with encroachment upon the thecal sac and displacement of the left nerve root, shallow right disc herniation with encroachment, small central posterior herniations, and a mild bulging disc. (*Id.* at 582.) An MRI of the cervical spine on June 20, 2009 revealed disc degeneration and shallow desiccated disc herniations accompanied by bony spurring and mild bone narrowing. (*Id.* at 591.)

c. Consulting Physicians

i. Dr. Tasneen Sulaiman

In February 2007, Dr. Sulaiman, an internal medicine physician, conducted a one-time consultative examination on behalf of the Social Security Administration ("SSA"). (*Id.* at 437.) He diagnosed plaintiff with cervical and lumbar radiculitis and histories of hypertension, anxiety and depression. (*Id.*) A physical examination revealed that plaintiff could not squat and that he experienced limitations in his range of motion in the cervical and lumbar spine. (*Id.* at 435-36.) However, Dr. Sulaiman noted that plaintiff could walk on heels and toes without difficulty, had a normal gait, required no assistance changing or getting on and off the examination table, and had no difficulty sitting, standing, or walking. (*Id.*) Dr. Sulaiman concluded that, although plaintiff had mild difficulty bending, he maintained the capacity for more than moderate exertion. (*Id.*)

In March 2007, a State Agency medical consultant assessed that, in an 8-hour workday, plaintiff could sit up to 6 hours, stand/walk up to 6 hours, and lift/carry up to 20 pounds occasionally and 10 pounds frequently. (*Id.* at 438-43.) He also noted that plaintiff could bend, stoop, crouch, kneel and climb occasionally with no postural, manipulative, communicative or environmental restrictions. (*Id.*)

4

####        ii.      Dr. A. Stockton

In June 2007, Dr. Stockton, a State Agency psychological consultant, discussed plaintiff's mental residual functional capacity to perform work-related tasks with Dr. Gadaleta. (*Id.* at 453-66.) Dr. Stockton concluded (in a Psychiatric Review Technique Form) that plaintiff did not meet any listed disability. (*Id.* at 463.) He explained that plaintiff maintained moderate limitations maintaining social functioning, concentration, persistence, and pace and had one or two deterioration episodes, of extended duration. (*Id.*) However, plaintiff was not significantly limited in any areas of understanding or memory, carrying out simple instructions, working in coordination with others without distraction, and socially interacting with the general public. (*Id.* at 467-69.)

####        iii.     Dr. Shapiro

In July 2009, Dr. Shapiro, a physician practicing in the same medical group as Dr. Goldstein, provided an orthopedic consultation. (*Id.* at 698-99.) He reported an impression of lumbago and an opinion of partial, temporary disability. (*Id.*)

####        iv.      Dr. Adam Hammer

In October 2007, Dr. Hammer, a pain management specialist, examined plaintiff. (*Id.* at 536-39.) Dr. Hammer diagnosed lumbago, lumbar facet arthropathy, herniated discs, lumbar radiculopathy, cervicalgia, and cervical facet arthropathy. (*Id.* at 538.) He discussed treating options of oral medications, physical therapy, exercise, and interventional spinal procedures. (*Id.* at 539.)

In August 2009, Dr. Hammer examined plaintiff and found temporary, partial disability. (*Id.* at 25.)

####        v.       Dr. Erlinda Austria

Dr. Austria, a consulting SSA surgeon, examined plaintiff on May 24, 2010. (*Id.* at 711-21.) She diagnosed plaintiff with injuries to the lower back, neck and right shoulder, herniated and bulging cervical and lumbar discs, and a right rotator cuff tear. (*Id.*) In June 2010, she assessed that, in an 8-hour workday, plaintiff could sit for 3 hours, stand for 3 hours, walk for 3 hours, and lift/carry 21 to 50 pounds occasionally and up to 10 pounds frequently. (*Id.*) She also noted that plaintiff could occasionally climb stairs/ramps, balance, stoop, kneel, crouch, crawl, push, pull, reach, and could frequently use hands to handle, finger, and feel. (*Id.*) However, since Dr. Austria's report was contradictory and indicated less restriction than the rest of the record, the ALJ gave it little weight. (*Id.*)

####        vi.      Dr. Sharon Grand

Due to inconsistencies between the reports of Dr. Gadaleta and State Agency psychological consultants, an interrogatory was sent to Dr. Grand, a clinical psychologist and medical expert, in May 2010. (*Id.* at 25.) Dr. Grand indicated that plaintiff has Major Depressive Disorder, but concluded that his residual mental functioning capacity allowed him to maintain a simple, low stress job. (*Id.* 25-26.) She also noted that it was unclear whether Dr. Gadaleta's opinion, which indicated the greatest limitations to the plaintiff's functional capacity, was based on physical or psychological considerations. (*Id.*)

###    d.      Plaintiff's Testimony

At the February 14, 2008 hearing, plaintiff testified that he had constant neck pain, headaches, lower back pain that radiated to his hips, and numbness in his left leg. (*Id.* at 65-67, 72.) He also testified that, upon performing certain activities, he experienced

5

right shoulder pain, tremors, and body shaking. (*Id.*) Plaintiff described his medications, injection treatments, side-effects, and his back and occasional neck brace. (*Id.* at 67-69, 73, 80-81.) He testified that he could stand/walk for 15-30 minutes each and lift less than 5 pounds. (*Id.* at 73.)

At the May 18, 2010 hearing, plaintiff testified that he could sit/stand for 15-20 minutes each, lift 5-8 pounds, and that his whole body trembled. (*Id.* at 45-46.) He also testified that he felt depressed and had panic attacks daily. (*Id.* at 47.)

### B. Procedural History

On September 29, 2006, plaintiff filed for DIB, alleging disability since February 24, 2006. (AR 181.) The application was denied. (*Id.* at 83.) A hearing was held before an Administrative Law Judge ("ALJ") on February 14, 2008. (*Id.* at 60-82.) On March 6, 2008, the ALJ issued a written decision finding that plaintiff was not disabled. (*Id.* at 84-96.) On January 23, 2009, the Appeals Council granted plaintiff's request for review and consolidated the claim with a later claim filed on October 8, 2008. (*Id.* at 97-101.) On April 17, 2009, the Appeals Council vacated the ALJ decision, remanded for further administrative proceedings, and directed the ALJ to give further consideration to treating source opinions, medical experts, claimant's subjective complaints, and claimant's residual functional capacity. (*Id.* at 102-06.) A hearing was held on May 18, 2010, by ALJ Rayner. (*Id.* at 38-59.) On July 30, 2010, the ALJ issued a partially favorable decision finding a disability onset date of November 10, 2008, the day before plaintiff turned 50 years of age. (*Id.* at 17-37.) Plaintiff appealed the decision to the Appeals Council, which was denied on February 18, 2011. (*Id.* at 1-5.)

Plaintiff filed this action on April 13, 2011. Defendant filed a motion for judgment on the pleadings on November 8, 2011. Plaintiff filed a cross-motion for judgment on the pleadings and an opposition to defendant's motion on December 6, 2011. Defendant filed a memorandum in further support of its motion for judgment on the pleadings and in opposition to plaintiff's cross-motion on December 20, 2011. On December 27, 2011, plaintiff filed a reply in further support of its cross-motion for judgment on the pleadings and in opposition to defendant's motion. The Court has carefully considered the parties' arguments. For the reasons set forth below, the Court denies defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings and remands the case to the ALJ for further proceedings consistent with this Memorandum and Order.

### II. DISCUSSION

#### A. Legal Standard

##### 1. Standard of Review

A district court may only set aside a determination by an ALJ that is "based upon legal error" or "not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotations and citations omitted)). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v.*

*Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

In order to obtain a remand based on additional evidence, a plaintiff must present new evidence that: "(1) is 'new' and not merely cumulative of what is already in the record[;]" (2) is material, in that it is "relevant to the claimant's condition during the time period for which benefits were denied," probative, and presents a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner; and (3) was not presented earlier due to good cause. *Lisa v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

2. The Disability Determination

A claimant is entitled to disability benefits under the SSA if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

7

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

### B. Application

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, the plaintiff argues that the ALJ erred by: (1) failing to apply the "treating physician rule" to the medical opinions of Dr. Goldstein, Dr. Liguori, and Dr. Gadaleta because the ALJ did not give those opinions "controlling weight"; (2) failing to properly consider plaintiff's credibility; and (3) failing to properly consider the opinion of the treating chiropractor, Dr. Rosner.

As set forth below, this Court concludes that the ALJ gave sufficient reasons for his decision not to give controlling weight to the medical opinions of the treating physicians. Additionally, this Court finds that sufficient evidence supports the ALJ's determination that the plaintiff's subjective testimony as to the intensity, persistence, and limiting effects of his symptoms was not persuasive. However, this Court finds that the ALJ erred in giving "little weight" to the opinion of plaintiff's chiropractor solely on the grounds that "the opinion of a chiropractor does not constitute evidence from an acceptable medical source." (AR 22.)

#### 1. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial work activity is work activity that involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a), and gainful work activity is work usually done for pay or profit, 20 C.F.R. § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of February 24, 2006. (*Id.* at 17, 19.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### 2. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521. The ALJ in this case found that plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbosacral spines, cervical and lumbar radiculopathy, right shoulder tendonitis, a gastroesophagael reflux disorder and a depressive disorder." (AR 20.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### 3. Listed Impairment

If the claimant has such an impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1

8

of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(c). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.) The ALJ noted that evidence has not shown "nerve root compression with a neural-anatomical distribution of motor loss, muscle weakness and sensory and reflex loss; of spinal arachnoiditis, or lumbar spinal stenosis resulting in claudication, as required to meet a listed impairment. (*Id.*) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

4. Residual Functional Capacity and Past Relevant Work

If the claimant does not have a listed impairment, the ALJ determines the claimant's residual functional capacity, in light of the relevant medical and other evidence in the claimant's record, in order to determine the claimant's ability to perform his past relevant work. 20 C.F.R. § 404.1520(e). The ALJ then compares the claimant's residual functional capacity to the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the ability to perform his past relevant work, he is not disabled. *Id.* In this case, the ALJ found, as discussed further *infra*, that plaintiff does not have the residual functional capacity to perform his past relevant work as a construction laborer. (AR 28.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

5. Other Work

At step five, if the claimant is unable to perform his past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the SSA has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. 20 C.F.R. § 404.1560(c); *see also Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998).

In this case, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity, and found that prior to November 10, 2008, plaintiff remained capable of performing unskilled sedentary work that existed in significant numbers in the national economy. (AR 34.) However, beginning on November 10, 2008, plaintiff's age category changed and he became "disabled" under Medical-Vocational Rule 201.14 because his vocational skills were non-transferrable to other occupations. (*Id.*) In reaching this conclusion, the ALJ rejected the opinions of the treating physicians, Dr. Goldstein, Dr. Liguori, and Dr. Gadaleta, and relied on the medical evidence of consulting physicians, specialists, and experts. (*Id.* at 27.) The ALJ also found that the plaintiff's allegations as to the intensity, persistence, and limiting effects of his symptoms were not persuasive. (*Id.*) Additionally, the ALJ afforded "little weight" to the opinion of plaintiff's chiropractor on the grounds that "the opinion of a chiropractor does not constitute evidence from an acceptable medical source." (*Id.* at 22.)

a. Treating Physician Rule

The Commissioner must give special evidentiary weight to the opinion of the treating physician. *See Clark*, 143 F.3d at 118. The "treating physical rule," as it is known, "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with

9

other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark*, 143 F.3d at 118; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The rule, as set forth in the regulations, provide:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Furthermore, while treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e)(1). *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[t]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.")

In this case, plaintiff argues that the opinions of Dr. Goldstein, Dr. Liguori, and Dr. Gadaleta stating that plaintiff is disabled and cannot work, should be controlling. However, a "treating physician's statement that the claimant is disabled cannot itself be determinative." *See Snell*, 177 F.3d at 133. Their opinions must be supported by clinical and diagnostic tests and must not be inconsistent with other aspects of the record. Here, the ALJ described the lack of clinical and diagnostic techniques to support their opinions of complete disability and further highlighted other medical evidence that was inconsistent with their assessments.

The Commissioner does not dispute that plaintiff suffers from impairments of cervical and lumbosacral radiculopathy. However, the ALJ correctly noted that MRI, EMG, and EKG tests do not support a diagnosis of nerve root impingement in the cervical or lumbosacral spine or a severe impairment of the upper extremity. If the ALJ had ignored diagnostic tests that supported the physicians' assessments, there could be ground for remand. *See Reyes v. Barnhart*, 226 F. Supp. 2d 523, 529-30 (S.D.N.Y. 2002). However, here, the ALJ considered all medical evidence available and determined that the alleged severity of the medical impairment was unsupported.

The ALJ also cannot reject a treating physician's opinion on the sole basis that it conflicts with the physician's own clinical findings. *See Balsamo*, 142 F.3d at 80. Here, however, the ALJ did not reject the treating physicians' opinions simply because of a lack of supporting clinical and diagnostic tests, but also on the basis of inconsistencies with other significant medical evidence. The ALJ explained that the reports of the treating physicians were inconsistent with the medical reports of Dr. Sulaiman, Dr. Stockton, Dr. Singh, and Dr. Hammer, and other State Agency consultants, who reported that plaintiff was not totally disabled and was capable of performing sedentary work.

With respect to Dr. Gadaleta, the record was unclear whether Dr. Gadaleta was assessing plaintiff's functional limitations from a psychiatric perspective or simply documenting plaintiff's portrayal of his physical limitations due to back pain. On May 15, 2002, Dr. Gadaleta wrote that plaintiff's back pain caused his inability to function. (AR 448.) On February 12, 2008, he stated that plaintiff was unable to work due to back pain (*Id.* at 558) and that his back pain superseded his ability to work. (*Id.* at 556).

In any event, even assuming *arguendo* that Dr. Gadaleta's opinion was referring to plaintiff's functional limitations from a psychiatric perspective (rather than simply documenting plaintiff's statement regarding physical limitations), any opinion that plaintiff was completely unable to work from a psychological standpoint was also inconsistent with the assessments of Dr. Austria and Dr. Grand. Dr. Austria believed that plaintiff was capable of light work, which demands greater exertion than sedentary work. Dr. Grand, a psychiatric medical expert who reviewed Dr. Gadaleta's medical findings, opined that plaintiff could maintain a low stress job. (*Id.* at 704.) Dr. Grand noted that the medical findings did not include any mention of the frequency and severity of plaintiff's alleged panic attacks, and assessed no limitations in plaintiff's ability to understand, remember, and carry out simple instructions. (*Id.* at 700, 705.)

Thus, sufficient evidence in the record supports the ALJ's decision that the treating physicians' opinions were not entitled to controlling or even considerable weight.

b. Giving Reasons and Weighing the Evidence

If the opinion of the treating physician as to the nature and severity of the impairment is not given controlling weight, the Commissioner must apply various factors to decide how much weight to give the opinion. *See Shaw*, 221 F.3d at 134; *Clark*, 143 F.3d at 118. These factors include: (i) the frequency of examination and length, nature, and extent of the treatment relationship, (ii) the evidence in support of the opinion, (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. *see Clark*, 143 F.3d at 118 (citing 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2)). When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must "give good reasons in his notice of determination or decision for the weight [he] gives [the claimant's] treating source's opinion. *Clark*, 143 F.3d at 118 (quoting 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2)); *see also, e.g.*, *Perez v. Astrue* No. 07-cv-958 (DLI), 2009 WL 2496585, at *8 (E.D.N.Y Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources."). A failure by the Commissioner to provide "good reasons" for not crediting the opinion of a treating physician is a ground for remand. *See Snell*, 177 F.3d at 133.

Losquadro argues that, even if the ALJ properly determined that the treating physicians' opinions were not entitled to controlling weight, the ALJ failed to indicate his reasons for that determination and failed to specify how much weight he afforded to the treating physicians' opinions. However, this Court cannot agree. After providing a

detailed description of the medical reports and opinions of the treating physicians, the assessments of consultative examiners, and the diagnostic test results, the ALJ explained:

> Based on the claimant's testimony regarding his daily activities, the findings of Dr. Sulaiman, a consultative examiner (Exhibit 10F); the assessment of State Agency medical consultant (Exhibit 11F) and the opinion of Dr. Adam Hammer, a pain management specialist who examined the plaintiff in August 2009 and found temporary, partial disability (Exhibits 39F & 41F), the Administrative Law Judge finds that the claimant has remained exertionally capable of sedentary work. The opinions/assessments of Dr. Liguori and Dr. Goldstein, treating sources, are not supported by the objective medical findings on diagnostic studies such as MRI's of the claimant's cervical and lumbosacral spine throughout the record, which showed no evidence of nerve root impingement or compromise and electrodiagnostic studies of the claimant's upper extremities, which were within normal limits with no evidence of cervical radiculopathy – which both Dr. Liguori and Dr. Goldstein diagnosed and obviously relied upon in formulating their functional capacity assessments.

(AR 25.)

The ALJ further explained his decision that the functional assessment of Dr. Gadaleta was not entitled to controlling weight. To resolve the conflicting medical evidence between Dr. Gadaleta and State Agency psychological consultants, an interrogatory was sent to Dr. Grand, a medical expert. The ALJ clearly stated his reasons for giving controlling weight to the report of Dr. Grand: "As the medical expert's opinion is supported by substantial evidence in the record, it is adopted by the undersigned in finding that the claimant – despite a severe mental impairment – has remained mentally capable of performing simple, low stress, work." (*Id.* at 26.) The ALJ explained that Dr. Grand confirmed that Dr. Gadaleta's functional assessment was not "adequately or clearly explained and not supported by the overall record based on psychiatric symptoms alone" and that it was "unclear whether the doctor's answers were based on physical or psychological limitations." (*Id.* at 26.) The ALJ further elaborated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p 96-6p and 06-3p.

(*Id.* at 26.)

The ALJ's analysis in this case is distinguishable from the deficient analyses in the cases cited by the plaintiff. For example, in *Burgess v. Astrue*, the ALJ did not credit a treating physician's opinion because he found that the treating physician's opinion was not supported by objective evidence. 537 F.3d 117, 130-31 (2d Cir. 2008). The treating physician's opinion was, however, plainly supported by an MRI report. *Id.* Accordingly, the Second Circuit vacated and remanded the ALJ decision on the grounds that the ALJ had failed to give good reasons for disregarding

the treating physician's opinion. *Id.* Whereas the ALJ deciding *Burgess* erred by ignoring clearly probative evidence, here, the ALJ has considered all relevant clinical and diagnostic tests in the record. Similarly, in *Reyes v. Barnhart*, the ALJ erred in asserting that the treating physician's assessments were unsupported by clinical findings when, in fact, the treating physicians' conclusions were based upon and consistent with the clinical tests, CT scans, X-rays, and other exams of the plaintiff. 226 F. Supp 2d at 529. Here, by contrast, sufficient evidence supported the ALJ's determination that the diagnostic tests did not support the assessments of the treating physicians. Additionally, in *Balsamo v. Chater*, the ALJ erred because he did not "cite *any* medical opinion to dispute the treating physicians' conclusions." 142 F.3d 75 at 81. Here, however, the ALJ discusses, at length, the numerous consulting physicians' opinions, the medical expert testimonies, and the diagnostic tests that are inconsistent with the conclusions of the treating physicians.

Thus, the ALJ has provided a sufficient and persuasive explanation for giving little weight to the opinions of the treating physicians.

c. Subjective Testimony

Aside from objective medical facts, the ALJ must consider subjective evidence of pain and disability in his "severity" analysis, *see Mongeur,* 722 F.2d at 1037, including evidence from non-medical sources such as statements or reports from the claimant and testimony from relatives. *See* 20 C.F.R. §§ 404.1529(a), 404.1513(d)(4). Subjective symptoms, however, are insufficient to establish a person's disability under the SSA unless there are medical signs and laboratory findings showing that a medical impairment could reasonably be causing the pain or other symptoms. S.S.R. 96–7p; *see also* 20 C.F.R. §§ 404.1529(d)(1), 416.929(d) (1).

Additionally, when a claimant's statements about her pain and disability suggest a greater severity of impairment than the objective medical evidence shows by itself, the Commissioner considers relevant factors such as the following: the claimant's daily activities; the nature, location, onset, duration, frequency, and intensity of her pain; factors that precipitate or aggravate claimant's pain or disability; the type, dosage, effectiveness, and side effects of medication; any other treatment; and any other measures the claimant used to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96–7p.

Here, the ALJ applied the legal standard for considering the plaintiff's subjective testimony and delineated the two-step process for evaluating the intensity, persistence, and limiting effects of plaintiff's symptoms. (*Id.* at 26.) The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not persuasive to the extent they were inconsistent with the objective medical findings.

(*Id.* at 27.)

The ALJ proceeded to indicate the specific inconsistencies between the plaintiff's subjective testimony and the medical evidence concerning plaintiff's motor and sensory capabilities. The ALJ also showed how the plaintiff's testimony was inconsistent with the residual functional capacity assessments of the treating physicians, and highlighted various diagnostic tests that did not support symptoms to the

13

extent alleged by the patient. Under the guidelines established by S.S.R. 96–7p, the ALJ does not need to give great weight to the plaintiff's subjective testimony or give credence to the alleged severity of the symptoms and their limiting effects when it is unsupported by the record. Here, the ALJ considered the plaintiff's subjective testimony, and sufficient evidence in the record supports the ALJ's determination that plaintiff was not disabled to the extent alleged.

### d. Chiropractor

However, the ALJ erred by giving "little weight" to the opinion of Dr. Rosner, plaintiff's chiropractor, solely on the grounds that he is a chiropractor. When assessing a claimant's disability, the ALJ performs a two-step analysis. In step one, plaintiff must show a medically determinable impairment, which must be supported by evidence from "acceptable medical sources." 20 C.F.R. § 404.1513(a). In step two, the ALJ must assess the severity and functional limitations of such impairments, and considers evidence from "other sources," in addition to "acceptable medical sources." 20 C.F.R. § 404.1513(d); *Solsbee v. Astrue*, 737 F. Supp. 2d 102, 114 (W.D.N.Y. 2010). Although a chiropractor does not qualify as an "acceptable medical source" and thereby cannot establish a medical impairment, a chiropractor is listed as an "other source," whose opinion should be considered in step two of the analysis. 20 C.F.R. § 404.1513(d); SSR 06-03p ("Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.") These medical sources, such as chiropractors, are important in the medical evaluation because they "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." S.S.R. 06-03p.

In assessing a chiropractor's opinion, the ALJ does not need to apply the treating physician rule and afford *controlling* weight to the chiropractor's opinion. *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995). However, the ALJ must afford *some* weight to a treating chiropractor's assessment. *Kostzenskie v. Astrue*, 07-CV-1320, 2009 U.S. Dist. LEXIS 66047, at *9 (N.D.N.Y. July 30, 2009) (citing *Mongeur*, 722 F.2d at 1039 n.2).

In determining how much weight to afford a source listed as "other" under the regulations, the ALJ may consider: (i) how long the source has known plaintiff and frequency of treatment, (ii) how consistent the opinion is with other evidence; (iii) the degree to which the source presents relevant evidence to support an opinion; (iv) how well the source explains the opinion; (v) whether the source has a specialty or area of expertise related to the individual's impairment; and (vi) any other factors that tend to support of refute the opinion. *See* S.S.R. 06-03p ("Although the factors [listed above] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'"); *Solsbee*, 737 F. Supp. 2d at 102.

In this case, plaintiff was treated by a chiropractor for an extended duration and both Dr. Goldstein and Dr. Singh recognized that chiropractic care was an important element of plaintiff's treatment. (AR 413, 573.) Despite that, the ALJ explained that "little weight" was given to Dr. Rosner's opinion, because "the opinion of a chiropractor does not constitute evidence from an acceptable medical source." (*Id.* 22.)

14

The ALJ has discretion in determining the amount of weight to give to various medical opinions and can determine to afford little weight to an opinion if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4); *Snell*, 177 F.3d at 133. Of course, that discretion also applies to "other" medical sources, such as a chiropractor. *See* 20 C.F.R. § 404.1513(d); *Diaz*, 59 F.3d at 314 ("The ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him."). However, the ALJ cannot disregard or give little weight to a medical opinion solely because it is categorized as an "other source." *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (ALJ erred in dismissing social worker's report "simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record"); *Solsbee*, 737 F. Supp. 2d at 114 (ALJ erred in affording "little weight" to chiropractor's opinion, where he "[e]ssentially . . . granted no weight to [the chiropractor's] opinion because chiropractors are not considered an acceptable medical source under the Regulations").

Defendant argues that Dr. Rosner's opinion "could not impact the case because his clinical findings were inconsistent with those made by the other physicians of record." (Def.'s Reply Mem. and Opp. at 3, Dec. 20, 2011, ECF No. 18.) If, however, this was the basis for the ALJ's rejection of Dr. Rosner's opinion, the ALJ was required to explain that position. *See Canales*, 698 F. Supp. 2d at 344. *See generally Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004) (per curiam) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). A reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962); *see Snell*, 177 F.3d at 134. This Court cannot be certain what impact, if any, the chiropractor's opinion would have had on the ALJ's determination if it was properly considered under the S.S.R. 06-03p framework, rather than being rejected simply because it was the opinion of a chiropractor and, in any event, the ALJ should be required to state the reason for his or her decision on this issue. In short, the ALJ erred in giving "little weight" to the opinion of plaintiff's chiropractor solely on the grounds that "the opinion of a chiropractor does not constitute evidence from an acceptable medical source" (AR 22), and thus remand is warranted.

This Court's holding is consistent with the numerous courts that also have clearly stated that, although an ALJ has the discretion to assign little weight to a chiropractor's opinion, the ALJ cannot do so *solely* because a chiropractor is not an acceptable medical source, but rather must still consider the opinion as an "other source" under the applicable rules. *See, e.g.*, *Sanfilippo v. Astrue*, 274 F. App'x 551, 553 (9th Cir. 2008) ("The ALJ stated that a chiropractor is not an 'acceptable medical source,' and that therefore a chiropractor's opinion is not entitled to controlling weight. The ALJ is correct that a chiropractor is not an 'acceptable medical source.' 20 C.F.R. § 404.1513(a). However, an ALJ 'may' consider the opinion of an 'other' medical source, such as a chiropractor, to determine the severity of an impairment. 20 C.F.R. § 404.1513(d)(1). 20 C.F.R. § 404.1527(d) states that 'regardless of the source, the Social Security Administration 'will evaluate every medical opinion [it] receive[s].' The ALJ applied the wrong standard with regard to the

15

opinion of the treating chiropractor. Accordingly, we remand for the administration to apply the proper standard to the treating chiropractor's opinion."); *Kelly v. Astrue*, No. 1:11-cv-00738-LJO-SKO, 2012 WL 3638029, 2012 U.S. Dist. LEXIS 118293, at *21-22 (E.D. Cal. Aug. 21, 2012) ("The ALJ provides no discussion of Chiropractor McClanahan's opinion other than to state he is not an acceptable medical source. That is simply a statement of fact, and is not adequate consideration of the evidence itself. While the ALJ may evaluate the weight of the opinion based on its source, here the ALJ appeared not to have given the opinion any consideration whatsoever. An ALJ has an obligation to explain why significant probative evidence has been rejected. Social Security Ruling 06-03p makes clear that all 'evidence' [is] to be considered, even from medical sources who are not 'acceptable' medical sources under the regulations. SSR 06-3p. The ALJ must explain how the evidence was weighed – simply pointing out that a chiropractor is not an acceptable medical source provides no reasoning for the court to review." (citation omitted)); *Clemmons v. Astrue*, 1:10-cv-902, 2012 WL 219512, 2012 U.S. Dist. LEXIS 8650, at *23 (S.D. Ohio Jan. 25, 2012) ("While a chiropractor is not an 'acceptable medical source' for purposes of the treating physician rule, *see* 20 C.F.R. §§ 404.1513(a) and (d), that does not mean that an ALJ may reject the results of objective tests or other clinical evidence *solely* because it comes from a chiropractor." (emphasis in original) (citation omitted)), *adopted by* 2012 U.S. Dist. LEXIS 20994 (S.D. Ohio Feb. 21, 2012); *Cowgar v. Comm'r of Soc. Sec. Admin.*, 1:07CV59, 2008 WL 4283324, at *37 (N.D. W.Va. Sept. 17, 2008) (Report and Recommendation) ("[H]ad the ALJ dismissed [the chiropractor's] reports solely because [he] was a chiropractor, his dismissal would have been in error." (citation omitted)).

III. CONCLUSION

For the reasons set forth above, the case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. Specifically, on remand, the ALJ must consider the chiropractor's opinion in accordance with S.S.R. 06-03p, in light of all of the evidence, and must explain how much weight he has afforded to the chiropractor's opinion and the basis for that determination.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date: September 21, 2012
Central Islip, NY

\* \* \*

Plaintiff is represented by Terry I. Katz, Terry Katz & Associates, P.C., 300 Jericho Quadrangle, Suite 180, Jericho, NY 11753. The attorney for defendant is Loretta E. Lynch, United States Attorney, Eastern District of New York, by Arthur Swerdloff, 271 Cadman Plaza East, 7th Floor, Brooklyn, NY 11201.